IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL ACTION FILE NO. |
| v. | |
| TASHAWNA DENISE STOKES, M.D. | 1:14-CR-290-TWT-JKL-2 |

## NON-FINAL REPORT AND RECOMMENDATION

Pending before the Court is Defendant TaShawna Denise Stokes, M.D.'s Motion for Severance [Doc. 160]. The government opposes the motion [Doc. 166], and Dr. TaShawna Stokes has filed a reply in support of her motion [Doc. 168]. On April 12, 2018, I held oral argument on the motion. For the following reasons, it is **RECOMMENDED** that the motion to sever be **DENIED**.

## I.    BACKGROUND

### A.    Charges Against Defendants

On August 6, 2014, a federal grand jury returned an indictment against Dr. Oscar Jameson Stokes charging him with conspiracy to distribute, outside the usual course of professional medical practice and for no legitimate medical purpose, controlled substances at his pain clinic, Innovative Pain Management Clinic (the "Clinic"), as well as with substantive distribution counts. [*See* Doc. 1.]

Approximately eleven months later, on July 7, 2015, the government obtained a twenty-one count superseding indictment, adding Dr. TaShawna Denise Stokes, Dr. Jameson Stokes's wife, as a co-defendant. [Doc. 55.] The superseding and now operative indictment charges Dr. TaShawna Stokes in sixteen separate counts:

- Count One charges both Defendants with conspiracy to distribute and dispense controlled substances in violation of 21 U.S.C. § 846;

- Counts Five through Ten charge both Defendants with illicitly prescribing oxycodone, a Schedule II substance, to a patient identified as "C.F.," outside the scope of professional practice and not for a legitimate medical purpose, on five separate dates from April through August 2014, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C);[1]

- Counts Eleven through Fourteen charge both Defendants with illicitly prescribing Dilaudid, MS Contin, or Oxycodone, all of which are Schedule II substances, to a patient identified as "J.R.," outside the

[1] Counts Two through Four charge Dr. Jameson Stokes with using the Clinic to illicitly prescribing Schedule II substances to a patients outside the scope of professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 21 U.S.C. § 856(a)(1).

2

scope of professional practice and not for a legitimate medical purpose, on four separate dates from May through August 2014;

- Count Fifteen charges both Defendants with illicitly prescribing oxycodone to a patient identified as "S.M.," outside the scope of professional practice and not for a legitimate medical purpose, on May 6, 2014;

- Count Sixteen charges both Defendants with illicitly prescribing Dilaudid and Opana ER, also a Schedule II controlled substance, to a patient identified as "B.B.," outside the scope of professional practice and not for a legitimate medical purpose, on May 20, 2014;

- Count Seventeen charges both Defendants with conspiracy to violate 18 U.S.C. § 1956, the federal money laundering statute, alleging that the Stokes acquired money from illegally prescribing and distributing controlled substances to operate the Clinic, fund salaries of Clinic employees, pay off loans used to purchase Clinic equipment, and to lease space for future medical offices; and

- Counts Twenty and Twenty-One similarly charge Dr. TaShawna Stokes with two substantive violations of the money laundering statute

3

by depositing funds that were the proceeds of the unlawful distribution of controlled substances on February 18, 2014 and February 21, 2014.[2]

[*Id.*]

## B.    The Parties' Arguments on Severance

Dr. TaShawna Stokes now argues that by charging her and her husband in the same indictment, the government has made it impossible for her to adequately defend herself in this case because Dr. Jameson Stokes possesses substantial and material exculpatory evidence that he alone can offer on her behalf, namely that she was not involved with many of the illicit prescriptions referenced in the indictment and that Dr. Jameson Stokes prescribed or authorized all other prescriptions at issue in this case.  [Doc. 160.]

In support of her motion, Dr. TaShawna Stokes attaches a declaration from Dr. Jameson Stokes in which he outlines the testimony that he intends to offer on her behalf if they are tried separately.  [Doc. 160 at 7; Doc. 160-1 (Declaration of Oscar Jameson Stokes ("Jameson Stokes Decl.").]  In the declaration, Dr. Jameson

_____

[2] Counts Eighteen and Nineteen charge Dr. Jameson Stokes alone with two substantive violations of the money laundering statute by depositing funds that were the proceeds of the unlawful distribution of controlled substances.

Stokes states that, if tried separately from his wife, he will testify on her behalf because he believes that his testimony would be helpful to her and would demonstrate that she did not commit the offenses she is charged with in the superseding indictment.  (Jameson Stokes Decl. ¶¶ 10-11.)  He conditions his testimony only upon being tried separately from his wife.  (*Id.*)  With respect to Count One (the conspiracy to distribute controlled substances charge), he states that he would testify that Dr. TaShawna Stokes did not conspire with him to violate any law, and that she "had no physical presence or involvement with [the Clinic] until around mid-June 2014," around two months before agents raided the Clinic and arrested Dr. Jameson Stokes.  (*Id.* ¶ 12.)  He would also testify that Dr. TaShawna Stokes had no involvement with the alleged prescriptions identified in Counts Five, Six, Seven, Eleven, Twelve, Fifteen, and Sixteen, as each of those prescriptions predate June 2014, and were written before she came to work at the Clinic.  (*Id.* ¶ 14.)  Along similar lines, he would also testify that she did not see the patients listed in those counts on the dates in question, issue the prescriptions referenced in those counts, or otherwise have any involvement with those alleged prescriptions.  (*Id.* ¶ 15.)

With regard to the prescriptions referenced in Counts Eight, Nine, Ten, Thirteen, and Fourteen, which were allegedly written when Dr. TaShawna Stokes was working at the Clinic, Dr. Jameson Stokes states that he would testify that he saw the patients, C.F. and J.R., when they "initially" came to the Clinic, and that he alone decided to issue the prescriptions based on his own independent medical judgment. (Dr. Jameson Stokes Decl. ¶¶ 16-17.) He also states that he "authorized" all the prescriptions set forth in Counts Eight, Nine, Ten, Thirteen, and Fourteen, just has he did when he "initially" saw those patients.[3] (*Id.* ¶ 18.)

Finally, with regard to each of the more than 100 Clinic patients whose files the government's proposed expert witness, Dr. Ted Parran, reviewed and whose prescriptions he concluded were not issued for legitimate medical purposes, Dr. Jameson Stokes states he would testify first, that Dr. Parran's conclusions were incorrect, and second, that he alone authorized the prescriptions referenced in each file. (Dr. Jameson Stokes Decl. ¶¶ 19-21.)

Based upon the declaration, Dr. TaShawna Stokes argues that Dr. Jameson Stokes has "critical, exculpatory testimony" that he will offer on her behalf that is

---

[3] As noted above, only Dr. Jameson Stokes is charged in Counts Two through Four, Eighteen, and Nineteen.

essential to her claim of innocence.  [Doc. 160 at 11.]  According to Dr. TaShawna Stokes, her pressing need to allow Dr. Jameson Stokes to present this evidence overrides considerations of judicial administration and economy, because her need for the testimony is bona fide, the testimony is significant to her defense, and she will be unduly prejudiced if she were unable to present the testimony.  [*Id.* at 11-12.]

The government opposes severance on multiple grounds.  [Doc. 166.]  First, the government argues that Dr. TaShawna Stokes cannot show that there is a bona fide need for the testimony of her husband because she can establish similar exculpatory testimony through other witnesses—namely former employees of the Clinic—that she did not work at the Clinic, visit the Clinic regularly, or have anything to do with the operations of the Clinic before June 2014.  [*Id.* at 6, 8.]  The government additionally submits that its evidence against Dr. TaShawna Stokes will not be limited to the testimony of a single witness that could be rebutted entirely by Dr. Jameson Stokes's testimony; rather, multiple witnesses will testify concerning her involvement at the Clinic.  [*Id.* at 7-8.]  Indeed, Dr. TaShawna Stokes is observed on a covert video signing prescriptions for patients she never examined.  [*Id.*]

Second, the government next argues that the substance of the proposed testimony is neither exculpatory for Dr. TaShawna Stokes nor inculpatory to Dr. Jameson Stokes; rather, it is conclusory and/or "self-serving, and contradicted by other evidence and [Dr. TaShawna Stokes's] own admissions." [Doc. 166 at 9.] The government contends that because specific self-incrimination is a predicate to demonstrating the unavailability of co-defendant testimony, and none of Dr. Jameson Stokes's proffered testimony is incriminatory in any real sense, severance would not be appropriate in his case. [*Id.* at 10.]

The government also argues that the proffered testimony is not accurate. In particular, Dr. TaShawna Stokes admitted that she signed prescriptions when Dr. Jameson Stokes was not at the clinic, which is at odds with Dr. Jameson Stokes's declaration that he used his own independent medical judgment to authorize the prescriptions. [Doc. 166 at 10.] Additionally, his assertion that she was not involved in the practice prior to June 2014 is belied by her deposits of allegedly tainted Clinic funds into bank accounts in February 2014. [*Id.*]

Finally, the government argues that even if Dr. TaShawna Stokes could demonstrate a bona fide need for the testimony and that Dr. Jameson Stokes's testimony is sufficiently specific and inculpatory, (1) she will not be prejudiced if

8

he decides not to testify and (2) that severing the two parties will unnecessarily strain the resources of the government and the Court, such that the Defendants should remained joined for trial.  [Doc. 166 at 11-14.]  Regarding prejudice, the government reiterates that Dr. Jameson Stokes's proffered testimony is self-serving and mostly devoid of exonerative facts.  [*Id.*]  In addition, the government contends that there will be other witnesses who will testify as to Dr. TaShawna Stokes's involvement in the conspiracy.  [*Id.* at 12.]

Dr. TaShawna Stokes has filed a reply.  [Doc. 168.]  She reiterates that she has shown a bona fide need for the testimony since Dr. Jameson Stokes alone can offer specific, detailed, and exonerative testimony regarding each count in the superseding indictment, and no other witness can offer testimony of that nature. [*Id.* at 2-7.]  She also argues that the proposed testimony is exculpatory because it rebuts or negates elements of the prosecution's case.  [*Id.* at 9-12.]  Additionally, she maintains that Dr. Jameson Stokes's statements are far from self-serving, as he admits he signed over 100 prescriptions at issue in this case, thereby conceding a critical element of the government's case against him.  [*Id.* at 12-13.]  Finally, she argues that her constitutional right to a fair trial substantially outweighs considerations of judicial economy.  [*Id.* at 14-17.]

9

## II.   LEGAL ANALYSIS

### A.   Severance Due to Prejudice

Federal Rule of Criminal Procedure 8(b) permits the joinder of defendants in the same indictment "if they are alleged to have participated in the same act or transaction," and the general rule is that defendants who are indicted together should be tried together, especially in conspiracy cases. *United States v. Chavez*, 584 F.3d 1354, 1359-60 (11th Cir. 2009); *United States v. Browne*, 505 F.3d 1229, 1268 (11th Cir. 2007); *United States v. Cobb*, 185 F.3d 1193, 1197 (11th Cir. 1999); *see also Zafiro v. United States*, 506 U.S. 534, 537-38 (1993).  Rule 14 authorizes the severance of properly joined defendants for trial if their joinder "appears to prejudice a defendant . . . ."  Fed. R. Crim. P. 14(a).  Even so, "[t]he burden is on the defendant to demonstrate that a joint trial will result in specific and compelling prejudice to the conduct of [her] defense," *United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997), as it is a "'well-settled principle that it is preferred that persons who are charged together should also be tried together,' particularly in conspiracy cases." *United States v. Smith*, 918 F.2d 1551, 1559 (11th Cir. 1990) (quoting *United States v. Morales*, 868 F.2d 1562, 1571 (11th Cir. 1989) (quotation marks omitted)).

The Eleventh Circuit has recognized four general types of prejudicial joinder that can require severance under Rule 14:  (1) where the defendants rely on mutually antagonistic defenses; (2) where one defendant would exculpate the moving defendant in a separate trial, but will not testify in a joint setting; (3) where inculpatory evidence will be admitted against one defendant that would be inadmissible against the other; and (4) where the moving defendant will be prejudiced by "spillover" of evidence, which may prevent the jury from sifting through the evidence to make an individualized determination as to each defendant. *Chavez*, 584 F.3d at 1360-61 (citations omitted).   Severance on any of these grounds is "rarely granted," and is, in any event, committed to the sound discretion of the trial court; moreover, the denial of a motion for severance will not be reversed absent a clear abuse of discretion.  *Id.* at 1360; *see also Cobb*, 185 F.3d at 1197-98.

"This circuit's framework for analyzing a motion to sever based on the desire to offer the exculpatory testimony of a co-defendant is well established." *Browne*, 505 F.3d at 1269.  "The defendant must first demonstrate:  '(1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the codefendant would

indeed have testified at a separate trial.'" *Id.* (quoting *Cobb*, 185 F.3d at 1197). "Once the defendant makes that threshold showing, the court must then: '(1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider judicial administration and economy; and (4) give weight to the timeliness of the motion.'" *Id.* (quoting *United States v. Baker*, 432 F.3d 1189, 1236 (11th Cir. 2005)).

### B.    Threshold Showing

To make a threshold showing that severance is warranted based upon exculpatory testimony from a co-defendant, a defendant must demonstrate that there is a bona fide need for the testimony and that it is credibly exculpatory.  In evaluating the bona fide need, the Court considers, among other things, whether other witnesses can provide the testimony on the subject matter proffered by the co-defendant, such that it is not cumulative of other evidence.  *United States v. Green*, 818 F.3d 1258, 1282 (11th Cir. 2016) (concluding that defendant did not show a bona fide need for co-defendant's testimony where defendant could have explored contents of pharmacy's records through testimony of other employees and employees could have testified regarding defendant's duties and responsibilities); *see also Browne*, 505 F.3d at 1270 ("'If the testimony is purely cumulative, or of

negligible weight or probative value, the court is not required to sever.'") (quoting *Byrd v. Wainwright*, 428 F.2d 1017, 1021 (5th Cir. 1970)).  Likewise, the Court must review the substance of the proffered testimony, including whether it provides specific, exonerative facts on behalf of the defendant; includes inculpatory statements against the interests of the testifying co-defendant; and/or otherwise lacks sufficient credibility.  *Browne*, 505 F.3d at 1269-70.  The Court therefore addresses each area of proposed testimony in turn.

In paragraph 12 of his affidavit, Dr. Jameson Stokes states generally that if he were tried separately from his wife he would testify "that she did not conspire with me to violate any law."  [Dr. Jameson Stokes Decl. ¶ 12.]  To the extent that Dr. Jameson Stokes seeks to testify that his wife not conspire with him to violate any law, such a statement, standing alone, is devoid of any specific facts sufficient to make a threshold showing for severance.  *See United States v. Novaton*, 271 F.3d 968, 990 (11th Cir. 2001) (statement that co-defendant would testify that defendant "did not conspire with me, or to my knowledge with anyone else, to possess with intent to distribute cocaine at any time in 1993 as alleged in Count One of the Superseding Indictment in this case" was "precisely the type of self-serving statement which [the Circuit has] found to be insufficient to show 'compelling

prejudice' requiring a new trial"); *see also Browne*, 505 F.3d at 1270 (affidavit with "undocumented conclusory allegations subject to substantial and damaging impeachment" was insufficient).

Dr. Jameson Stokes then goes on to say that "[his] wife had no physical presence or involvement with my medical practice until around mid-June of 2014," and that prior to June 2014, "[his] wife did not work at the clinic, visit the clinic on a regular basis or have anything to do with the operation of the clinic." [Dr. Jameson Stokes Decl. ¶ 12] Therefore, Dr. Jameson Stokes states, he would testify that his wife was not involved with Clinic prior to her joining the Clinic in June 2014, and had no involvement with the prescriptions that predated her arrival (*i.e.*, with the prescriptions identified in Counts Five, Six, Seven, Eleven, Twelve, Fifteen and Sixteen). [*Id.* at ¶¶ 12-15.] While this testimony might be exculpatory as to Dr. TaShawna Stokes, it appears to be cumulative, because there are other witnesses who can testify to Dr. TaShawna Stokes's lack of involvement at the Clinic prior to June 2014. For example, at the evidentiary hearing in this case, Tameka Stokes, a former medical assistant at the Clinic, noted that Dr. TaShawna Stokes only started working at the Clinic in June 2014 and that she had previously worked full-time as a pediatrician. [Doc. 105 ("Hr'g Tr.") at 26-27, 35.] Tameka

14

Stokes testified that to her knowledge, Dr. TaShawna Stokes only wrote prescriptions for patients who had initially seen Dr. Jameson Stokes. (Hr'g Tr. at 52.) Moreover, it is likely that any of the many other individuals working at the Clinic, whom both Defendants know (and who knew both Defendants), would be able to similarly testify, as would any patients to whom the relevant prescriptions were issued. As a result, there is no bona fide need for Dr. Jameson Stokes to testify about his wife's non-involvement with prescriptions that were written before she joined the Clinic.

Next, with respect the prescriptions that are dated after Dr. TaShawna Stokes began working at the Clinic (*i.e.*, with the prescriptions identified in Counts Eight, Nine, Ten, Thirteen, and Fourteen), Dr. Jameson Stokes states that he would testify that (1) he initially saw each of those patients and prescribed the drugs at issue based on his own medical judgment, and (2) he authorized all the prescriptions identified in the superseding indictment and by Dr. Parran. [Dr. Jameson Stokes Decl. ¶¶ 16-18.] While the proposed testimony in this instance does appear to be non-cumulative, the Court cannot agree that the substance is credibly exculpatory of Dr. TaShawna Stokes. There does not seem to be a dispute that the government will introduce evidence at trial showing that Dr. TaShawna Stokes signed her

husband's name to prescriptions.  Indeed, she points out in her reply brief that her husband will not actually testify that "he himself physically signed all of the prescriptions at issue."  [Doc. 168 at 12 n.4.[4]]  But Dr. TaShawna Stokes points to no authority—in her briefs or upon questioning during oral argument—to support the proposition that it is lawful to sign the name of another practitioner to a prescription for a Schedule II controlled substance or that it is a valid defense to the charges against her that another practitioner "authorized" the prescription.  To the contrary, the DEA regulations require that the practitioner who authorizes a prescription be the person who signs it.  Specifically, 21 C.F.R. § 1306.03(a) provides that a prescription may be issued only by "an individual practitioner" who is "[a]uthorized to prescribe controlled substances by the jurisdiction in which he [or she] is licensed to practice."  21 C.F.R. § 1306.05(a) additionally requires that every prescription for a controlled substance be signed on the date the day when issued and bear "the name, address and registration number of the practitioner."

---

[4] Indeed, TaShawna Stokes does not dispute that she signed prescriptions for her husband.  She admitted in her answer to the government's complaint in the parallel civil forfeiture proceeding that she, on occasion, signed prescriptions in Dr. Jameson Stokes's name while he was absent from the Clinic.  (*See United States v. $1,875,976.65 in Funds Seized from Bank of Am. Account Number XXXXXXXX6010, et al.* No. 1:14-cv-3120-WSD, Docket No. 25 ¶ 244.)

16

Finally, the regulations also provides that when oral prescriptions are not permitted (as is the case for Schedule II prescriptions), "paper prescriptions shall be written with ink or indelible pencil, typewriter, or printed on a computer printer ***and shall be manually signed by the practitioner***."  21 C.F.R. § 1306.05(d) (emphasis added).  The Court is not aware of any authority that recognizes a practitioner can lawfully sign another practitioner's name to a prescription for a Schedule II controlled substance.  Thus, Dr. Jameson Stokes's proposed testimony that he initially saw the patients and "authorized" all the prescriptions—including those on which his wife allegedly signed his name—does not appear to provide Dr. TaShawna Stokes with a legal defense in this case.

Moreover, even if Dr. Jameson Stokes's proposed testimony that he "authorized" all of the prescriptions at issue did provide his wife with a valid defense, his assertion is too conclusory.  He does not offer any details whatsoever concerning the specifics of the purported "authorizations."  For instance, he does not explain how he communicated his authorization to his wife, when he did so, or what he specifically authorized her to do.

Dr. TaShawna Stokes's reliance on *United States v. Cobb*, 185 F.3d 1193 (11th Cir. 1999) and *United States v. DiBernado*, 880 F.2d 1216 (11th Cir. 1989),

two cases where the Eleventh Circuit found that the defendant established a bona fide need for a co-defendant's testimony, is misplaced.  [Doc. 160 at 11; Doc. 168 at 8-10.]   In *Cobb*, the sole evidence against the defendant was eyewitness testimony of a woman who claimed to have seen the defendant allegedly receive stolen money, which only the co-defendant's testimony would have directly rebutted.  185 F.3d at 1198.  Here, by contrast, the evidence against Dr. TaShawna Stokes is not limited to a single eyewitness; rather, it is largely documentary and videographic, as it includes, among other things, written prescriptions signed by both of the Defendants and footage of Dr. TaShawna Stokes herself signing prescriptions.   In addition, as discussed above, other former employees and/or patients of the Clinic can likely testify concerning Dr. TaShawna Stokes's involvement or non-involvement with the Clinic prior during the relevant periods.  Unlike the testimony in *Cobb*, then, Dr. Jameson's Stokes proposed testimony in this case is either cumulative, conclusory, or fails to credibly exculpate Dr. TaShawna Stokes.

Similarly, in *DiBernado*, the Eleventh Circuit simply affirmed[5] the district court's severance of one defendant, D'Aspice, from two alleged co-conspirators after D'Aspice showed that in a severed trial he would testify that the two co-defendants were not involved in the conspiracy and had no knowledge of the alleged criminal activities (in that case, arranging for the shipment of obscene materials). *DiBernado*, 880 F.2d at 1228.  The court reasoned that such testimony "was peculiarly within the knowledge of the three co-defendants [alone], and, therefore, if it was to be presented at all, it would have to be provided by one of this group." *Id.*  As discussed, Dr. Jameson Stokes's proposed testimony concerning his wife's non-involvement at the Clinic can be provided from other sources.  Furthermore, the proposed testimony of the severed defendant in *DiBernado* concerned both his co-defendants' lack of participation in and knowledge of criminal activity, whereas Dr. Jameson Stokes offers no testimony concerning his wife's knowledge, merely her participation or non-participation,

---

[5] Notably, *DiBernado*, did not hold that severance was required under the circumstances of that case; rather, the Court held that the district court did not abuse its discretion in granting severance.  880 F.2d at 1228.  The default rule remains that severance "rarely granted," is committed to the sound discretion of the trial court *Chavez*, 584 F.3d at 1360-61; *see also Cobb*, 185 F.3d at 1197-98 (decision on motion to severe only reversed on clear abuse of discretion).

which again, may be provided by other sources.  Finally, as explained above, Dr. Jameson's testimony confirms that she was signing prescriptions at issue in this case, which, unlike the proposed testimony in *DiBernado*, seems to be more inculpatory than exculpatory.

Beyond the issues identified above, the government's concerns about the reliability of Dr. Jameson Stokes's proposed testimony are well-taken, and the Court agrees that a jury may very well give little weight to his testimony.  His proposed statements are "in no way contrary to [his] own [penal] interests." *Green*, 818 F.3d at 1280 (quoting *United States v. Pepe*, 747 F.2d 632, 651 (11th Cir. 1984)).[6]  Moreover, the Defendants are a married couple with two young daughters, and he therefore has a strong incentive to minimize his wife's involvement in the alleged criminal activities to protect his children from having both parents

---

[6] Dr. TaShawna Stokes accurately points out that Dr. Jameson Stokes will admit that he wrote or authorized every prescription referred to in the superseding indictment and in the patient files that Dr. Parran reviewed, thus conceding an important element that the government would have to prove at trial against him. What is not clear, however, is whether Dr. Jameson Stokes ever actually disputed that he wrote or "authorized" prescriptions at issue, and whether his proposed testimony amounts to a legitimate concession in this regard.  In any event, Dr. Jameson Stokes persists in his contention that each prescription was legitimate; as such, his contention that he wrote or authorized every prescription at issue does not necessarily inculpate him.

convicted and sentenced to terms of imprisonment.  Nonetheless, even assuming

that a jury would fully credit[7] that Dr. Jameson Stokes's proposed testimony about

his wife's lack of involvement, Dr. TaShawna Stokes still cannot show bona fide

need for her husband's testimony or that all of this proposed testimony is, in fact,

exculpatory, for the reasons discussed above.  Thus, she has not carried her burden

to make a threshold showing for severance.

### C.    Additional Considerations

Even if Dr. TaShawna Stokes could make a *prima facie* showing, the Court

would still conclude that severance is not appropriate here in light of the four

relevant considerations discussed above.  Admittedly, there is no dispute that the

the testimony would be consistent with Dr. TaShawna Stokes's theory of the case

and that her request for severance, filed before this case has been certified ready

for trial, is timely.  But the Court cannot find that the absence of her husband's

proposed testimony would cause her undue prejudice, as others can testify to facts

indicating that she had no involvement with the Clinic before June 2014, and she

---

[7] While "'[c]redibility is for the jury, [] the judge is not required to sever on patent fabrications,'" *DiBernardo*, 880 F.2d at 1229 (quoting *Wainwright*, 428 F.2d at 1021), and when proffered testimony from a co-defendant has "negligible weight or probative value," the court need not severe a case, *Browne*, 505 F.3d at 1270 (citations omitted)).

has not shown that his other proposed testimony that he "authorized" prescriptions that she signed is exculpatory.

In addition, judicial economy also weighs heavily against severance. Both Defendants are charged together in both conspiracy counts and twelve substantive distribution charges. It is highly likely that witnesses' testimony and other evidence presented throughout the trial will apply to both Defendants. In addition, cases such as the one at bar can be extremely resource-intensive, and there is nothing to suggest that this case would be any different. Indeed, this case has been pending for nearly four years due to the many pre-trial issues that the parties have litigated, and the government's slow pace in disclosing expert evidence. The trial itself will likely take at least two weeks (and probably longer), as the parties will likely seek to introduce the testimony of numerous fact and expert witnesses, video surveillance of the Clinic's operations, and large volumes of documentary evidence. From an administrative standpoint, a single trial would be highly preferable to two.

## III.   CONCLUSION

For the foregoing reasons and cited authority, it is **RECOMMENDED** that Defendant TaShawna Denise Stokes, M.D.'s Motion for Severance [Doc. 160] be **DENIED**.

IT IS SO RECOMMENDED this 18th day of April, 2018.

_____
JOHN K. LARKINS III
United States Magistrate Judge